IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN MONTUE,

    Petitioner,                               No. CIV S-04-1697 FCD JFM P

   vs.

WARDEN SCHWARTZ,[1]

    Respondent.                           FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding through counsel[2] with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1979, petitioner was convicted of robbery, kidnapping for purpose of robbery, grand theft and conspiracy with a firearm use enhancement and was sentenced to life with the possibility of parole. (Resp.'s Ex. A, Abstract of Judgment.) In the instant action, petitioner challenges the 2002 decision by the California Board of Prison Terms (BPT) finding him unsuitable for parole. This was petitioner's fifteenth suitability

---

[1] Warden Schwartz is the warden of the institution where petitioner is currently incarcerated and is hereby substituted in for the prior named respondent, Warden Mike Knowles. See Smith v. Idaho, 392 F.3d 350, 354-55 (9th Cir. 2004)(warden, as state officer having custody, is typically proper respondent in habeas petitions).

[2] Petitioner was appointed counsel on November 2, 2005, after the pro se petition was fully briefed. On March 28, 2007, counsel informed the court petitioner intended to rest on the pleadings filed to date.

1

hearing; his first parole hearing was held in 1984. (August 18, 2004 Petition, at 1.) After carefully reviewing the record, the court recommends that the petition be denied.

## ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. <u>Williams</u>, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Procedural History

On May 3, 2002, petitioner filed an administrative appeal challenging his March 13, 2002 denial of parole. (Traverse, Appendix A.) On February 11, 2003, the Board denied petitioner's appeal. (Traverse, Appendix B.)

On or about March 2003, petitioner filed an application for writ of habeas corpus in the Sacramento County Superior Court, challenging the 2002 denial of parole. (Traverse at 3 & Appendix C.)

On April 30, 2003, petitioner's state court petition, filed in Sacramento County Superior Court, Case No. 03F03138, was denied. (Id.) The Superior Court found that petitioner had failed to exhaust his administrative remedies on the specific claims he raised in his petition. (Id.) The court also noted that petitioner failed to attach the Board's decision and that the Board had not yet rendered its decision by the time petitioner filed the petition at issue. (Id.) The court cited In re Dexter, 25 Cal.3d 921, 925 (1979); In re Serna, 76 Cal.App.3d 1010, 1014 (1978), In re Swain, 34 Cal.2d 300 (1949) and In re Harris, 5 Cal.4th 813, 827 n.5 (1993) in its denial. The state court went on to deny the petition on the merits, citing In re Bower, 38 Cal.3d 865 (1985). The court found petitioner's incarceration was not disproportionate because he was serving a life sentence for kidnap for purposes of robbery. (Traverse, Appendix C.) The court denied petitioner's claim that the Board's denial of parole was arbitrary, finding that there was more than "some evidence" to support the Board's conclusion. (Traverse, Appendix C.)

On September 29, 2003, petitioner's new state court petition for writ of habeas corpus was denied as untimely, with a citation to In re Clark, 5 Cal.4th 750, 774-75 (1993).

3

(Answer, Ex. D at 41.) Petitioner had again challenged the 1997 denial of parole.[3] Petitioner then filed an amended petition and a notice of lodged documents. (Answer, Ex. D at 43.) On October 9, 2003, the Sacramento County Superior Court construed that filing as a motion for reconsideration of the denial of the petition and stated:

> The amended petition differs only in that it now contains a copy of an attempt by petitioner to have a recent reconsideration of his 1997 administrative appeal, and the Board of Prison Terms's September 23, 2003 response to petitioner that his original administrative appeal was completed on October 14, 1998, that he since has had two additional parole consideration hearings on December 15, 1999 and March 13, 2002, and that he is precluded at this time from any further consideration of the appeal decision of October 14, 1998. These documents are also what is included in his Notice of Lodging Documents. They make no difference to this case. Petitioner has not demonstrated that there is any reason to reconsider any of the grounds on which the denial of the habeas petition was based.

(Id.)

On October 16, 2003, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, Case No. S119742. (Answer, Ex. D.)

On or about December 12, 2003, petitioner sent the California Supreme Court a second application for writ of habeas corpus. (Traverse, at 4.) The Clerk of the Supreme Court construed the filing as a supplemental petition and filed it in Case No. S119742. (March 14, 2005 Appendix to Petition, Appendix B.)

The California Supreme Court denied the petitions in Case No. S119742 on July 28, 2004, with citations to In re Clark, 5 Cal.4th 750 (1993) and In re Miller, 17 Cal.2d 734 (1941). (Answer, Ex. D.)

Petitioner filed the instant action on November 22, 2004.

---

[3] "Six years after his parole denial of July 23, 1997, and five years after his habeas corpus petition in Sacramento County Superior Court Case No. 98F05592, challenging that parole denial, was denied for his failure to exhaust his administrative remedies, petitioner now chooses to once again challenge the July 23, 1997 denial of parole to him by the Board of Prison Terms." In re the Matter of John Montue, No. 03F07803 (September 29, 2003) (Answer, Ex. D at 41.)

III. Jurisdiction

Respondent argues that California law does not give rise to a federally protected liberty interest in parole release. The Ninth Circuit rejected this argument. <u>Sass v. California Bd. of Prison Terms</u>, 461 F.3d 1123 (9th Cir. 2006).

IV. Procedural Default

Respondent argues that the petition has been procedurally defaulted. When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under applicable state rules, the exhaustion requirement is satisfied, but the federal claims are procedurally barred. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991); <u>Casey v. Moore</u>, 386 F.3d 896, 920 (9th Cir. 2004). Similarly, if a federal constitutional claim is expressly rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted. <u>Coleman</u>, 501 U.S. at 729-30; <u>Bennett v. Mueller</u>, 322 F.3d 573, 580 (9th Cir. 2003). Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750. Although the question of procedural default "should ordinarily be considered first," a reviewing court need not do so "invariably," especially when it turns on difficult questions of state law. <u>Lambrix v. Singletary</u>, 520 U.S. 518, 524-25 (1997). <u>See</u> also <u>Busby v. Dretke</u>, 359 F.3d 708, 720 (5th Cir. 2004). In this case, this court finds that the petition can be resolved more easily by addressing it on the merits. Accordingly, this court will assume that the petition is not procedurally defaulted and will address it on the merits.

V. Petitioner's Claims

The March 13, 2002 decision challenged herein was made at a subsequent parole consideration hearing. (See Exhibit C to Answer to Petition for Writ of Habeas Corpus, filed February 28, 2005.) In its decision, the Board concluded that petitioner was not suitable for

5

parole and would pose an unreasonable risk of danger to public safety based on the especially cruel and callous commitment offense, his previous criminal record, including violent, assaultive behavior and unsuccessful juvenile probation and parole terms; his unstable social history, including early marijuana and drug use; his unsatisfactory institutional behavior, including recent disciplinary violations and his unwillingness to participate in any positive programming or self-help; his unrealistic parole plans; and the opposition of the local district attorney's office and the local police department. (Ex. C to Answer, *passim*, Ex. E, Board Report.) Petitioner claims that the Board's continued reliance on immutable factors in 2002 violated his rights to due process and that the Board's failure to find him suitable for parole violated his due process rights because the decision was not adequately supported by some evidence.

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts, see Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.1985), and is unavailable for alleged errors in the interpretation or application of state law, see Lewis v. Jeffers, 497 U.S. 764, 780 (1990). For this reason, petitioner's claims arising out of alleged violations of state law are not cognizable in this federal habeas corpus action.

California's statutory scheme governing parole "creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process Clause." Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); see also Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006). "'[T]he Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary."'" Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir. 2008) (quoting Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007) (in turn quoting Superintendent v. Hill, 472 U.S. 445, 457 (1985)).

/////

> California law allows the Board to consider a myriad of factors when weighing the decision of granting or denying parole. Parole may be denied if the Board "determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for [the] individual." Cal.Penal Code § 3041(b).

Biggs, at 915.

> The regulations governing the parole process provide six nonexclusive factors tending to show unsuitability for parole and nine nonexclusive factors tending to show suitability. The factors tending to show unsuitability are: (1) Commitment Offense; (2) Previous Record of Violence; (3) Unstable Social History; (4) Sadistic Sexual Offenses; (5) Psychological Factors; and (6) Institutional Behavior. 15 Cal.Code Regs. § 2402(c). In terms of the first factor, "Commitment Offense," the regulations explain that it tends to show unsuitability when "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." Id. at § 2402(c)(1). The factors indicating suitability for parole are: (1) No Juvenile Record; (2) Stable Social History; (3) Signs of Remorse; (4) Motivation for the Crime; (5) Battered Woman Syndrome; (6) Lack of Criminal History; (7) Age; (8) Understanding and Plans for the Future; and (9) Institutional Behavior. 15 Cal.Code Regs. § 2402(d).

Irons, 505 F.3d at 851 n.4. "Even though these suitability and unsuitability factors are helpful in analyzing whether a prisoner should be granted parole, California courts have made clear that the 'findings that are necessary to deem a prisoner unsuitable for parole,' Irons, 505 F.3d at 850, are not that a particular factor or factors indicating unsuitability exist, but that a prisoner's release will unreasonably endanger public safety." Hayward, at 543 (state law citations omitted).

Petitioner was received in state prison on June 20, 1979 following his conviction for kidnapping for purpose of robbery, robbery, grand theft and conspiracy to commit grand theft. (Ex. A to Answer.) Petitioner was sentenced to life with the possibility of parole. (Id.) Petitioner's initial parole consideration hearing was held in 1984. (Second Amended Petition at 18.) The Board's 2002 decision was petitioner's fifteenth denial of parole.

The record reflects that there was some evidence before the Board to support both the description of petitioner's commitment offense and his criminal history (he was on probation

at the time of the commitment offense).  (See Answer, Ex. C, at 6-8; 14; 20-21; 28.)  Petitioner had a record of violence and assaultive behavior, including assault with a deadly weapon, grand theft, resisting arrest, and failure to profit from society's previous attempts to correct his criminality, specifically, juvenile probation, parole and Youth Authority commitment.  (Id. at 28-29.)

        The record before the Board at the time of the 2002 hearing contains some evidence supporting the Board's conclusion that petitioner would pose an unreasonable risk of danger to public safety if released from prison.  In addition to his commitment offense and prior criminal history, petitioner's institutional behavior has been difficult.  (Id. at 21.)  Petitioner had a pending 115[4] and sustained two 128s[5] since his last parole hearing.  (Id.)[6]  Petitioner had programmed in a limited manner.  (Id. at 21, 29.)  The life prisoner evaluation report conducted by K.J. Anderson, CCI, dated December, 2001, noted that "considering the commitment offense, the prior criminal record and prison behavior," (id. at 22), Officer Anderson believed petitioner "still possesses an unreasonable degree of threat to society if released from prison at this time.  Based on petitioner's "unwillingness to conform with expectations and rules within institutional confines" (id.), Officer Anderson believes petitioner "will not conform with societal expectations or law if released."  (Id.)

        The Board found petitioner had not sufficiently participated in beneficial self-help and therapy programming, had failed to demonstrate evidence of positive change, and did not

---

[4] Petitioner was issued a 115 for refusing to give an anti-narcotic test.  (Id. at 11.)

[5] One 128 was issued for disrupting library operations; the other 128 was issued for not being in the library when he had been ducated to the library.  (Id. at 11.)

[6] Indeed, petitioner sustained 16 disciplinary write-ups in his 27 years in prison (as of 2006).  (November 6, 2007 Letter, Ex. Q.)  They were:  "Failure to Report (1982, 1984), Out of Bounds (1983), Performance (1986), Disobeying Orders (1987, 1987), Fighting (1988), Overfamiliarity with Staff (1993), Inciting Inmate Work Stoppage (1997), Failure to Comply with Grooming Standards (1998, 1998, 1998), and Refusal to Supply Urine Sample (2001, 2002, 2002, 2003).  (Id.)  At his 2007 Board hearing, it was noted that petitioner had sustained a new 115 for over-familiarity with staff.  (Id., Appendix P, at 33.)

8

have realistic parole plans. (Id. at 29.) The Board also noted that the Sacramento Police Department Chief of Police had written a letter opposing petitioner's parole, and a representative from the Sacramento County District Attorney's Office was present at the parole hearing to voice opposition to parole at the hearing. (Id.)

On the other hand, the record reflects petitioner had made some gains in terms of behavior in prison. On January 12, 2000, his classification score was 8. (Id. at 9.) On August 9, 2000, his score had lowered to 4, and by August 2, 2001, his classification score was zero. (Id.) However, such gains were recent. Petitioner also received a favorable report from Dr. Macomber as to psychological factors. (Id. at 21.) Petitioner was baptized on March 27, 1999, and obtained a certificate of achievement, dated November 5, 1984, for his completion of a vocational auto shop course with a C grade and 2000 hours. (Id. at 23.) Petitioner also had an automobile certification. (Id.) Petitioner had two laudatory chronos, for returning keys on August 17, 1980, and for administering first aid to another inmate on January 21, 1994. (Id. at 23-24.)

The United States Court of Appeals for the Ninth Circuit has held that after an inmate has "served the minimum number of years required by his sentence," Irons, 505 F.3d at 853, extended reliance solely "an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs at 917.

The undersigned previously reviewed the 1997 decision denying petitioner parole. Montue v. California Department of Corrections, CIV S-98-1580 LKK JFM P.[7] This court found that petitioner's due process rights were not violated by the 1997 denial of a parole date. (February 2, 2001 Findings and Recommendations at 3.) Specifically, the 1997 Board "relied on petitioner's commitment offense, his prior criminal history, the Board's view that petitioner had not participated in sufficient beneficial self-help and therapy programming, and a May 19, 1997

---

[7] A court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

psychiatric report which the Board viewed as not totally supportive of release." (Id., internal quotations omitted.)

The Ninth Circuit has not specified the number of denials or the length of time served beyond the minimum sentence that would constitute a due process violation. Petitioner had been denied parole by the Board fourteen times; this was his fifteenth parole suitability hearing. In another case, a court of this district granted a habeas petition, finding a due process violation in the denial of parole at the petitioner's twelfth parole suitability hearing after he had served twenty-four years of a sentence of life with the possibility of parole for first degree murder where all factors indicated suitability for parole. See Johnson v. Finn, 2006 WL 195159, *12 (E.D.Cal.2006); appeal argued and submitted, No. 06-17042 (9th Cir. September 24, 2007). Here, however, petitioner had not met all suitability factors for parole. Although petitioner argues his disciplinary history is pretty good for being in prison, most petitioners winning challenges to parole denials have sustained no prison disciplinaries or have not sustained a prison disciplinary for many years. For example, Mr. Hayward had "not had a major disciplinary violation in prison since 1989, and his last minor disciplinary infraction was in 1997." Hayward v. Marshall, 512 F.3d at 538; see also Madrid v. Mendoz-Powers, 2008 WL 724066 at *7 (E.D. Cal. March 17, 2008)("[Madrid] has been a model inmate, having committed not a single disciplinary infraction.")

In this case, the Board relied on more than the "unchanging factor" of petitioner's commitment offense and criminal history in denying him parole. Although the callous nature of petitioner's commitment offense and his criminal history weighed heavily in the Board's determination, his unstable social history, his prison disciplinary history, and his limited programming in prison, also counseled against parole. The Board concluded that petitioner needed to participate in self-help and therapy programming and needed additional time to gain that programming. (Answer, Ex. C at 31.) The Board recommended that petitioner "become and remain disciplinary free." (Id. at 32.) The record does not demonstrate that at the time of the

1 2002 decision the Board had relied for an extended period of time solely on the unchanging

2 factors of petitioner's commitment offense and prior criminal history.  Thus, the denial did not

3 violate petitioner's right to due process.

4          The Sacramento County Superior Court found there was more than "some

5 evidence" to support the denial of parole:

> petitioner's violent crime, . . . violent criminal history, . . . recent in-prison conduct indicating his continued unwillingness to follow rules, . . . lack of employment plans, . . . lack of programming of any kind, lack of work in prison, lack of vocational or educational training, or therapy or self-help – petitioner continues to demonstrate that he does not want to work, that he does not want to do anything to improve himself, that he wants to continue not to follow rules, all of which indicate that he would be a poor choice for success on parole and a danger to society if released.

11 (Traverse, Appendix C.)  After review of the record,[8] this court finds that the state court denial of

12 petitioner's claim was not contrary to, or an unreasonable application of, controlling federal law,

13 nor based on an unreasonable determination of facts.  See 28 U.S.C. § 2254(d).  Accordingly,

14 petitioner is not entitled to relief, and his petition should be denied.

15 VI. Proportionality

16          Petitioner also contends his due process rights were violated because his sentence

17 is not proportional to his underlying crime, in violation of the "uniformity" requirement of Cal.

18 Penal Code § 3041, subdivision (a). (Second Amended Petition at 23.)  However, under current

19 California law, the Board is neither required to refer to sentencing matrixes nor to compare the

20 prisoner's crime to other crimes of the same type in deciding whether the crime was especially

21 cruel or exceptionally callous but instead may find the crime especially cruel or exceptionally

---

[8] Although the state court referenced petitioner's lack of work as one factor the Board relied on in denying parole, the transcript of the hearing does not reflect such reliance.  The Board mentioned petitioner's work status in its decision: "It has been your decision to be unassigned voluntarily at work and do some performing in that fashion.  That is your decision, as well, and you can continue to make that decision as you desire." (Answer, Ex. C at 32.)  But it does not appear that petitioner's work history in prison played a major role in the Board's decision to deny him parole in 2002.

1  callous if there was violence or viciousness beyond what was "minimally necessary" for a
2  conviction. <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1095 (2005).  More importantly for purposes of
3  this federal habeas corpus action, petitioner has cited no federal law for the proposition that the
4  Due Process Clause requires a state parole board to either set a parole date where the board
5  members believe a prisoner poses an unreasonable risk of danger to society, engage in a
6  comparative analysis before denying parole suitability, or set a parole date within a state's
7  "matrix."  In short, petitioner's arguments that the state court has erred in applying state
8  sentencing laws to his release date are not cognizable in this federal habeas corpus proceeding.
9  <u>Estelle</u>, 502 U.S. at 67-68.  As discussed above, federal due process requires only that the
10 Board's decision be based on "some evidence" bearing "indicia of reliability."  <u>Jancsek v.
11 Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987).  This is true even though there may
12 be other factors favoring release.  The Board's decision, reached at the parole suitability hearing
13 in 2002 that petitioner was unsuitable for parole, meet that minimally stringent test.  This claim
14 must also fail.

15 V.  <u>Miscellaneous</u>

16          On November 13, 2007, petitioner filed a letter, in pro per, providing additional
17 documentation in support of his petition.  Petitioner also appended a copy of a subsequent Board
18 hearing held on May 30, 2007.  (<u>Id.</u> at Appendix P.)  Petitioner is advised that the instant ruling
19 addresses only the 2002 Board decision.

20          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a
21 writ of habeas corpus be denied.

22          These findings and recommendations are submitted to the United States District
23 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
24 days after being served with these findings and recommendations, any party may file written
25 objections with the court and serve a copy on all parties.  Such a document should be captioned
26 "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

1  failure to file objections within the specified time may waive the right to appeal the District
2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3  DATED:  April 1, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

001; mont1697.157